UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORDON MICHAEL HAYES : | CIVIL ACTION NO. |
| Plaintiff, : | |
| v. : | **JURY TRIAL DEMANDED** |
| THE WOOD COMPANY : | |
| Defendant. : | DECEMBER 15, 2020 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634; Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60, et seq.; and Connecticut state law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resided in this district at all times relevant.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

6. Plaintiff dual filed his complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO) and the Equal Employment Opportunity Commission (EEOC) and received a Release of Jurisdiction and Notice of Right to Sue. Plaintiff timely brings this action.

## PLAINTIFF

7. The Plaintiff, Gordon Michael Hayes ("Hayes" or "Plaintiff") is a natural person and a resident of the State of Connecticut.

## DEFENDANT

8. The Wood Company is a foreign company, headquartered in Pennsylvania, is registered to conduct business within the state of Connecticut, and conducts substantial business at 300 Boston Post Road, West Haven, CT 06516.

9. The Wood Company is a wholly-owned subsidiary of Sodexo, Inc. (herein "Sodexo" of "Defendant"), where Plaintiff was employed.

10. The Defendant employs more than twenty (20) employees.

## FACTUAL ALLEGATIONS

11. Hayes was sixty-three (63) years of age, DOB 1/5/1955 at all times relevant.

12. Hayes was hired on October 26, 2015, and ~~most~~ fulfilled the position of General Manager for over three years, until his wrongful termination.

13. At the time of the events, Hayes' supervisor was Michael Ward ("Ward") (age 49 at all times relevant), District Manager—14 years younger than Hayes.

14. Hayes performed the duties of his position in a satisfactory manner; however, he was treated disparately by the younger Ward.

15. Ward's made disparate remarks about Hayes stating that he had a "**lack of energy**"

and pelted him with ageist insults and remarks, stating he had "**memory problems**," and was the job "too much for him to handle," just prior to firing him.

### A. Hayes is Set up For Failure by the Younger Ward

16. In September of 2018, Ward placed Hayes on a performance improvement plan ("PIP") as a means to an end.

17. Prior to being issued a PIP by Ward, Hayes never had any prior write-ups or performance issues. In fact, all of Hayes' prior performance reviews stated that he had "Met Expectations." Thus, this was the first time that any alleged performance issued had been raised in Hayes' entire career.

18. With respect to the PIP itself, Hayes was promised by Ward that the PIP was supposed to be more of a development tool to assist Hayes with onboarding the new management team members. Additionally, this PIP was never a topic of the Performance Review of October 2018 for Hayes.

19. Yet, instead, it was used as a tool to assist in terminating his employment, despite Hayes' noticeable progress in performance. Regardless of his progress, many of the goals were not realistic — a set up for failure.

20. Then, on November 13, 2018, Ward and Hayes conducted a walk-through, and discussed the many success stories Hayes had been receiving regarding the sanitation of each unit. The surveys and client dialogue supported that observation.

### B. Ward in Furtherance of his Effort to Terminate Hayes Issues Him a Final Warning

21. Ward issued Hayes a final warning, dated November 16, 2018 (given to him on Nov. 19) for alleged performance deficiencies with respect to the walk-through that had occurred a week earlier, on 11/13/18, contradicting the positive conversations and

observations that were discussed after the walk-through and discussed with the unit team during the Operations Meeting on 11/13/18.

22. Even Daniel Auger ("Auger"), Senior Vice President, expressed positive feedback to the campus team on October 15, as Sodexo admitted in its under oath response to the CHRO—calling into question the veracity of the issues raised in Ward's warning.

23. Next, at the same meeting, Ward placed Hayes on an unpaid investigatory leave for allegedly authorizing an employee's immediate termination, without following Sodexo's termination process, which is not accurate.

24. With Hayes' understanding of the process, experience, and tenure, he would not have terminated an employee without using the IL process and presenting the appropriate information to human resources. Yet, this false accusation was the concocted reason for his suspension, and ultimately termination.

25. During the investigation regarding Hayes' suspension, Ward pointedly asked Hayes, "**do you have a memory problem**," after he presented his version of the events, a disparate comment directly related to Hayes' older age and another comment added to the many suffered by Hayes during the prior months.

26. Hayes' surprised by this remark, complained about it to Sodexo in a written statement regarding "Co-worker 1's" case, but this disparate comment was dismissed by Sodexo.[1]

---

[1] Actual names have been redacted for confidentiality purposes.

27. Prior to the initial meeting between Ward and Hayes, Ward made constant disparaging comments related to Hayes' age, including, "**do you have the stamina and memory for this position**?" — one of many ageist remarks made by Ward in the fall.

C.  **Hayes Engages in Protected Activity, is Retaliated Against**

28. As admitted by the Defendant in its under-oath response to the CHRO, Hayes told Ward that he had been offended by the "memory comments" — a protestation against being treated disparately.

29. To further support Hayes' contrived termination, Ward unfairly combined the "Co-worker 2" "incident" with the "Co-worker 1" "incident," in an effort to unfairly blame Hayes and make it appear as though this had been something commonly mishandled by him — which it was not.

30. Ward intentionally combined the cases to create the guise that Hayes did not learn from the 1st incident with Co-worker 1 to make him appear incompetent, and again, set him up for termination.

31. Further, many of Hayes' results were framed to only showcase negative results, in order to support a reason to terminate Hayes.

32. Moreover, Ward failed to provide Hayes with the tools, training, development, or constructive counseling, creating a situation that made it impossible for him to successfully make through his PIP, leaving only one possibility — termination.

33. Hayes, also complained to Ward numerous times about the disparate treatment he had been receiving in September, October, and November of 2018 and Hayes discussed Ward's treatment on at least two instances with Human Resources in the

-5-

fall of 2018, to no avail.

34. Less than a month after protesting Ward's disparate treatment, on December 6, 2018, Hayes was terminated from his General Manager position.

35. Subsequently, after Hayes' termination, he followed the process to have the RVP review his file concerning respect and fair treatment which is a Sodexo's HR Policy. Hayes was advised that he would be contacted regarding his discriminatory concerns but he never received a written or verbal response to his concerns.

36. Undercutting Sodexo's position that Hayes was terminated for alleged "poor performance" are many positive results of his performance.

37. For example,

   a. Beth Winthrop, Sodexo Head of Dietetics' and Advisory Board Member at UNH did a walk-through and inspection of MP and the Simple Serving station and set-up and was very positive about the results with an additional email pointing out Georgia's satisfaction on UNH side.

   b. Comments from Fairfield management team regarding very good look and taste of food and operation, it was especially noted that our look, taste and quality was so much better than their property.

   c. Survey results that showed an additional 400 surveys was up in every category with overall up 1%, sanitation up 8% and recommend up 5% this is all student driven.

   d. Catering reviews were positive with surveys and letters supporting this outlook.

   e. Annual reviews for the three years with Sodexo were "Meets," or better.

   f. For three years bonus was achieved with a profit share also going to the school due to exceeding 10% profits on our P&L at year end, for the past two years.

38. The younger Ward made multiple comments about my memory and stamina within

a very short timeframe leading up to my termination, which evinces his discriminatory frame of mind.

39. In addition, Ward aggressively wrote Hayes up for alleged performance issues, despite there being a plethora of other opinions that Hayes did perform his job in a satisfactory manner.

40. Lastly, the entire reason for Hayes' termination was fabricated and easily explainable, Sodexo just chose not to give credence to Hayes' version of the facts.

## COUNT ONE

### AGE DISCRIMINATION, IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

41. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-40 with the same force and impact as if fully set forth herein.

42. The Plaintiff, sixty-three (63) years of age is a member of a protected class.

43. The Plaintiff was at all times qualified for the position he held.

44. The Plaintiff was subjected to multiple disparate comments about his age, as aforementioned.

45. Plaintiff suffered adverse employment actions, including, but not limited to, the following:

   a) In September of 2018, Ward placed Hayes on a performance improvement plan.

   b) Ward issued Hayes a final warning, dated November 16, 2018, bypassing progressive discipline.

   c) Hayes was wrongfully terminated on December 6, 2018.

46. Defendant's actions were taken against Hayes solely due to his age.

47. As such, Defendant's actions and conduct are a violation of the ADEA.

48. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

49. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### AGE DISCRIMINATION, IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)

50. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-40 with the same force and impact as if fully set forth herein.

51. The Plaintiff, sixty-three (63) years of age is a member of a protected class.

52. The Plaintiff was at all times qualified for the position he held.

53. The Plaintiff was subjected to multiple disparate comments about his age, as aforementioned.

54. Plaintiff suffered adverse employment actions, including, but not limited to, the following:

    a) In September of 2018, Ward placed Hayes on a performance improvement plan.

    b) Ward issued Hayes a final warning, dated November 16, 2018, bypassing progressive discipline.

    c) Hayes was wrongfully terminated on December 6, 2018.

55. Defendant's actions were taken against Hayes due to his age.

56. As such, Defendant's actions and conduct are a violation of the ADEA.

57. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

58. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT THREE

### RETALIATION,
### IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

59. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-40 with the same force and impact as if fully set forth herein.

60. Defendant's adverse actions against the Plaintiff were his opposition to discrimination and retaliation.

61. As admitted by the Defendant in its under-oath response to the CHRO, Hayes told Ward that he had been offended by the "memory comments" — a protestation against being treated disparately.

62. Hayes, also complained to Ward numerous times about the disparate treatment he had been receiving in September, October, and November of 2018 and Hayes discussed Ward's treatment on at least two instances with Human Resources in the fall of 2018, to no avail.

63. Less than a month after protesting Ward's disparate treatment, on December 6, 2018, Hayes was terminated from his General Manager position.

64. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

65. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### RETALIATION,
### IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(4)

66. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-40 and 59-65 with the same force and impact as if fully set forth herein.

67. Defendant's adverse actions against the Plaintiff were his opposition to discrimination and retaliation.

68. Defendant's actions are in violation of Conn. Gen. Stat. §46a60(b)(4).

69. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

70. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FIVE

## BREACH OF IMPLIED CONTRACT

71. Paragraphs 1-40 are restated herein, with the same force and impact as if fully pled in this Second Count.

72. Sodexo maintains a progressive discipline policy, which delineates certain steps that must be taken before an employee can be terminated.

73. Through its progressive discipline policy, Sodexo had agreed, either by words or action or conduct, to implicitly undertake some form of actual contract commitment to Hayes under which he could not be terminated without just cause following progressive disciplinary measures.

74. Sodexo failed to follow its own progressive discipline in terminating Hayes' employment.

75. Plaintiff has sustained economic damages as a result of the breach.

### PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

-11-

       THE PLAINTIFF,

       GORDON MICHAEL HAYES

By: _____/s/_____
       Michael C. McMinn (#ct27169)
       **THE MCMINN EMPLOYMENT**
       **LAW FIRM, LLC**
       1000 Lafayette Blvd., Suite 1100
       Bridgeport, CT 06604
       Tel: (203) 683-6007
       Fax: (203) 680-9881
       michael@mcminnemploymentlaw.com

       *COUNSEL FOR PLAINTIFF*